Chicago, Rock Island & Pacific R. R. Co. *v.*
McConnell Heavy Hauling

5-3555                                      390 S. W. 2d 111

Opinion Delivered May 3, 1965.

[Rehearing denied June 7, 1965.]

*Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*Jack Holt, Jr.* and *John F. Park,* for appellee.

Carleton Harris, Chief Justice. In July, 1962, three representatives of appellant company, Chicago, Rock Island and Pacific Railway, called upon F. O. McConnell, president of McConnell Heavy Hauling, Inc., appellee herein, for the purpose of arranging for McConnell to unload and haul steel components from the Rock Island railhead to various missile construction sites near Little Rock. Charles J. Novak had been employed by the railroad as a special representative to solicit transportation of materials to the construction sites of missile bases. The Missouri Commerce Commission had granted Rock Island authority to operate a subsidiary motor carrier operation in that state, and this allowed Rock Island to offer to shippers a package proposal whereby construction materials were delivered by rail to the railhead nearest the

sites, and from the railhead to the site by truck. Rock Island did not have the necessary authority to make such a proposal in other states, but Mr. Novak solicited transportation business wherever missiles were being constructed. Rates and billing were not discussed by Novak with McConnell but the railroad agent was given a copy of McConnell's tariff, and Novak stated that he would subsequently send billing instructions to McConnell. Some months later, McConnell was notified of the first shipment of steel, and proceeded to unload it from the railroad cars, and to deliver it to the contractor on the missile sites. The steel was shipped on railroad bills of lading, and Panhandle Steel Products Corporation was named as both shipper and consignee. The bill of lading further stated, "% McConnell Heavy Hauling." Thereafter Novak informed McConnell that the unloading and hauling bills should be sent to Panhandle, and McConnell followed these instructions, but failed to receive payment. Subsequently, a representative of McConnell Company talked to the manager of Panhandle, and learned that Novak had entered into an agreement with Panhandle for that company to pay $4.00 a ton for unloading and hauling from the railhead, with the Rock Island to pay the balance of unloading and hauling costs. It is undisputed that McConnell never agreed to perform the work for $4.00 a ton, but rather has insisted at all times upon receiving its full tariff rates, which were considerably higher.

After getting back the invoices sent to Panhandle, appellee made demand upon the Rock Island for the full amount due, viz, $3,097.25 for unloading, and $2,855.00 for hauling. Payment was refused by appellant. Subsequently, McConnell instituted suit for the total amount, and, after the filing of an answer, denying liability, the case was tried by the Pulaski County Circuit Court, sitting as a jury. After hearing testimony, the court entered its judgment in favor of appellee in the amount of $5,952.25, together with interest at the rate of six percent per annum until paid, and from such judgment, appellant brings this appeal. For reversal, appellant relies solely upon the following single point:

"For the Railroad to pay the costs of unloading and hauling in this case would be for it to grant an illegal rebate to the shipper. Therefore, any purported agreement to pay such costs would be illegal and unenforceable."

This litigation is somewhat unusual in that there is no dispute, but that McConnell Company performed services, and there is no disagreement as to the value of the services performed.

Appellant states that McConnell, instead of properly suing Panhandle Corporation, has sought to make the railroad liable on an oral contract, entered into by an agent (Novak), who had no authority to contract. From appellant's brief:

"The Railroad has been embarrassed by the conduct of this agent in this case and in several other similar transactions in other states. However, whether the Railroad is embarrassed or hard-boiled, it is flatly prohibited by statutes of the United States from absorbing the costs of unloading and hauling steel and thereby, in effect, granting a rebate to the shipper in this case."

Appellant then cites a number of cases, which it contends to be controlling in this litigation. However, we do not agree that the cases cited are applicable to the case at bar, for the authority relied upon by appellant involves agreements between carrier and shipper, carrier and consignee, et cetera. Here, we have an agreement *between two carriers*. McConnell testified that no mention was made of Panhandle when Novak made the arrangements for McConnell Company to unload the railway cars and haul the material to the missile sites, and John Hicks, terminal manager for McConnell Company, gave the Rock Island representatives a copy of McConnell's tariffs. From the testimony:

"Q. Mr. McConnell, was there any discussion at this particular time concerning who was employing your company for this job?

A. No, Chicago said they had, I mean the Railroad said they had the steel to haul and wanted it unloaded and

hauled to the site and that we were common carriers within the line and would we haul for them.

Q. They did not identify any third party? In other words, they asked you to haul for them, is that correct?

A. Yes, sir, that's right.''

Albert F. Hatcher of Deerfield, Illinois, Assistant Vice-President of traffic for the Rock Island, testified that in February, 1963, he learned that Novak had been making unauthorized representations to contractors and shippers in various places over the nation, mentioning that he had received a telephone call from a company in Spokane, Washington, requesting payment for work that had been done. He also mentioned similar occurrences in Tucson, Arizona, and Wichita, Kansas. Hatcher testified that when he would finally locate Novak, the latter would deny that he had made any such arrangements, but said that he would ''straighten it out.'' Hatcher stated that Novak's services with the Rock Island were eventually terminated.

Under the undisputed testimony, it accordingly appears that Novak, on behalf of the Rock Island, entered into an agreement with McConnell Company for the latter to haul steel from the railhead at Little Rock to the missile sites; that no mention was made of the steel company for which the hauling was to be performed; that no agreement of any nature was made between appellee and Panhandle; that McConnell Company made known to the railway representatives its rates by furnishing them a copy of its tariff schedule.

Appellant's defense is particularly interesting in one respect. It contends that it could not perform such an agreement, because same would be illegal, and therefore unenforceable. Yet, as stated by appellee, in its brief:

''The Appellant is now asking that the Appellee be required to do what it strenuously contends it would be unlawful for Appellant to do. Appellant is asking that Appellee be required to deviate from its own tariff schedule and grant to it, Appellant, an illegal rebate. Appellee is bound by the same laws, and the same regulations of the

Interstate Commerce Commission as is the Appellant. Should Appellee agree to accept payment for its services in any amount less or different than the rates and charges specified in its tariff it would amount to an illegal exaction, which is unlawful, and would subject Appellee to penalties.''

We think there was substantial evidence to support a finding that McConnell Company did not occupy the status of a consignee—nor the status of an agent of consignee— nor was it an agent of the appellant railroad. This is simply a case where appellee is endeavoring to recover for an indebtedness due for services performed under a hauling and unloading contract with appellant.

Affirmed.

Mr. Justice Holt not participating.